UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VALENCIA MITCHELL | CIVIL ACTION |
| VERSUS | NO: 12-1265 |
| ARAMARK, ET AL. | SECTION: "C" (4) |

**ORDER**

Before the Court is a **Motion to Quash Independent Medical Exam (R. Doc. 15)**, filed by Plaintiff, Valencia Mitchell, ("Mitchell"), seeking an order from the court quashing an independent medical examination ("IME") noticed by Defendant, Aramark Corporation, ("Aramark.").[1] The motion is opposed, and Mitchell has filed a sur-reply. (R. Docs. 22, 23, 24).[2] The motion was heard by oral argument on Wednesday, October 10, 2012.

**I.    Background**

This personal injury lawsuit was filed by Mitchell, who alleges personal injuries to her finger arising from a maritime accident which occurred on August 11, 2011. (R. Doc. 15-1, p. 1). Mitchell, a housekeeper, alleges that she was in the process of tucking the corner of a sheet on the

---

[1]Mitchell's motion refers only to "defendant," and there are three "defendants" in this case: Aramark Corporation ("Aramark"), Transocean Offshore USA Inc. ("Transocean"), and GlobalSantaFe Drilling Company ("Global"). Because Aramark originally noticed the independent medical examination, the Court treats Aramark as the "Defendant" in this case, notwithstanding the fact that Transocean and GlobalSantaFe later stated that George was also their "physician of choice." (R. Doc. 23, pp. 1-2).

[2]According to Local Rule 7.5, all motions in opposition must be filed no later than eight days prior to the submission date. L.R. 7.5. Although neither of the two oppositions were filed timely in accordance with the submission date following granting of Mitchell's motion to expedite, both oppositions would have been timely under the original submission date of October 24, 2012, as they were filed on October 5, 2012, and October 8, 2012, respectively. Therefore, they can be considered by the Court notwithstanding the fact that neither party requested leave to file their oppositions prior to doing so.

top bunk of a bed when her finger caught on a screw, causing injuries. *Id.*

In support of her Motion, Mitchell argues that after the accident, she was examined by a reconstructive surgeon, Dr. Kenneth Odinet, ("Odinet"), who Aramark had chosen. (R. Doc. 15-1, p. 1). Odinet performed two surgeries on Mitchell's finger to repair damaged tendons, and then released her to resume work, with a disability rating of 40% of her finger, 8% of her hand, 7% of her upper extremity, and 4% of her total body disability. *Id.* Mitchell then visited a second doctor, Eric George ("George") for a second opinion. *Id.* at 2. George determined that Odinet's two prior surgeries had failed, and that a third surgery was required to alleviate the pain in Mitchell's hand. *Id.* Mitchell argues that she continues to experience severe pain and swelling of her finger. *Id.*

As to the instant motion, Mitchell seeks an order from the Court quashing an independent medical examination by Dr. Harold Stokes ("Stokes") scheduled for October 22, 2012. (R. Doc. 15). The motion is opposed, and Mitchell has filed a sur-reply. (R. Docs. 22, 23, 24).

## II.  **Standard of Review**

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Further, it is well established that "control of discovery is committed to the sound discretion of the trial court . . ."

2

*Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* at 26(b)(2)(C). In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

Rule 35 provides that the Court "may order a party whose medical . . . condition . . . is in controversy to submit to a physical . . . examination by a suitably licensed or certified examiner." Rule 35(a)(1).

### III.  Analysis

#### A.  Entitlement to IME

The parties do not contest that Mitchell has placed her physical condition in controversy. In support of her Motion, Mitchell argues that although Rule 35 permits a party to obtain an independent medical examination when the physical condition of a party is at issue, it is not warranted in this case because Mitchell's treatment has been entirely through doctors chosen by Defendants. (R. Doc. 15-1, p. 1).

In opposition, Aramark argues that although it arguably selected Odinet to treat Mitchell, such selection would have been made under its "cure" obligation pursuant to the Jones Act, prior

to litigation does not mean that it is not entitled to take an IME. (R. Doc. 22, pp.4-5).[3] Aramark argues that there are significant differences between the evaluations of Odinet and George, which warrant taking the IME. *Id.* at 4. Additionally, Defendants Transocean and GlobalSantaFe filed a joint motion in opposition. (R. Doc. 23). Therein, they argue that because neither Transocean nor Global is Mitchell's Jones Act employer, they are entitled to have their physician of choice, Stokes, perform the IME. *Id.* at 1-2.[4]

At oral argument, the parties reiterated their arguments. Mitchell admitted that Odinet had not treated Mitchell under the guise of an IME, but he had performed a *de facto* IME because Aramark had selected him.

In opposition, Aramark argued that case law suggested that *Jones* Act employers are not precluded from obtaining independent medical examinations after the onset of litigation. Moreover, although Odinet stated that Mitchell has reached maximum medical improvement and could return to work, Mitchell has not returned to work. However, a doctor recently selected by Mitchell had recommended a third surgery, therefore triggering a conflict between medical experts which Aramark hopes to resolve through an IME.

Mitchell argues that In her Sur-Reply, Mitchell argues that Aramark has already selected a doctor of its choice. (R. Doc. 24-2, p. 1).[5] Mitchell further argues that to suggest that *both* Aramark and Transocean/Global are entitled to separate IMEs would be unjust, considering that all three parties are now represented by the same counsel. *Id.* at 2. This would effectively "stack the deck" against the Plaintiff by subjecting her to a succession of potentially adverse medical examinations

---

[3]Although Aramark denied that it was Mitchell's Jones Act employer, Aramark noted that Mitchell had alleged that same and so assumed *arguendo* that this was true. Neither party raised this issue at oral argument.
[4]Transocean and Global also adopt the arguments made in Aramark's Opposition. (R. Doc. 23, p. 2).
[5]On October 8, 2012, Mitchell filed an exparte motion for leave to file a sur-reply. (R. Doc. 24). The Court granted this motion. (R. Doc. 27).

at the behest of each individual defendant. *Id.*

Under either the Jones Act or general maritime law, the employer of a seaman injured during the scope of his employment is obligated to provide maintenance and cure. 46 U.S.C. § 30104. "When a seaman becomes ill or injured while in the service of his ship, the shipowner must pay him maintenance . . . ." *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995) (abrogated on other grounds by *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 427 (2009)).[6] "Cure" is the right to necessary medical services. *Harrison v. Diamond Offshore Drilling, Inc.*, No. 07-417, 2008 WL 708076, at *14 (E.D. La. Mar. 6, 2008) (citing *Guevara*). Because the employer's treatment obligation arises regardless whether litigation is consummated, courts in this district have found that such treatment did not constitute an independent medical examination for purposes of litigation. *McClanahan v. Transocean Offshore International Ventures, Ltd.*, No. 05-2099, 2006 WL 2989243, at *2 (E.D. La. Oct. 19, 2006) (finding that party had "provided no authority depriving [Jones Act] employers of independent medical examinations on grounds that they selected and/or paid for a seaman's treating physicians."). Further, courts have found that where treatment is periodic in nature, such treatment is not properly classified as an IME. *See, e.g.*, *Atkinson v. Warrior Energy Services Corp.*, No. 09-7769, 2010 WL 4067623, at *1-*2 (E.D. La. Oct. 15, 2010) (finding that doctor's two-month treatment of patient was periodic, instead of an IME).

In this case, Odinet saw Mitchell on at least nine occasions between September 15, 2011, and June 19, 2012. (R. Doc. 22-1, pp. 1-6). Although the last two meetings occurred after Mitchell filed suit on May 16, 2012, (R. Docs, 1, p. 1; 22, p. 6), it is clear that Odinet's course of treatment prior to that time far exceeded the two-month period which the *Atkinson* court classified as "periodic."

---

[6]*Townshend* overruled *Guevara* as to the availability of punitive damages in cases of willful nonpayment in a maintenance and cure action brought under general maritime law. Although Mitchell has brought a claim for punitive damages on those grounds, *Guevara*'s general proposition that employers owe maintenance and cure obligations to seamen who are injured within the scope of their employment. *Guevara*, 59 F.3d at 1499.

Therefore, even assuming *arguendo* that (1) any treatment after litigation should be classified as an IME, and (2) Aramark was Mitchell's Jones Act employer, the treatment would not be properly classified as an IME. Therefore, the issue of whether the "deck" has been "stacked" against Mitchell by subjecting her to multiple IME's from various defendants is not before the Court, because as of now there is no "stack" to speak of.

### B.  Good Cause for Conducting the IME

Mitchell also contends in her Sur-Reply that even if Aramark is entitled to an IME it would serve no purpose, because Aramark sought the IME to determine whether Mitchell had reached "maximum medical improvement" for purposes of returning to work, that Odinet had already stated this fact, and that Mitchell's condition has not changed since the time she returned to work. (R. Docs. 15-1, p. 1; 24-2, p. 3). Moreover, Mitchell contends that even if Odinet and George disagree, such disagreement is irrelevant to a party's entitlement to an IME. (R. Doc. 24-2, p. 1).

In opposition, Aramark states that it has good cause for requesting the IME because it is beyond dispute that Mitchell's physical condition is in controversy. Further, Aramark states that the disagreement between Odinet and George is relevant because while Odinet stated that Mitchell has reached "maximum medical improvement" and was able to return to work, she has only returned to work part-time and has continued to experience pain. (R. Doc. 22, p. 4).

The Court notes that Mitchell's Complaint alleges that defendants failed to, *inter alia*, provide adequate care to Mitchell following her injury, which has led to ongoing and future pain, suffering, and medical expenses. (R. Doc. 1, p. 4). It is clear that resolution of the conflicting experts' opinions as to whether Mitchell had in fact achieved "maximum medical improvement." Aramark is clearly entitled to require Mitchell to submit to an independent medical examination under Rule 35.

6

### C. Neutrality of Stokes

Finally, Mitchell argues that even if the Court finds an IME is warranted, it should be conducted by a doctor other than Stokes because Stokes is not an adequately "independent" medical examiner. *Id.* at 3. This is so because Stokes was George's former partner, and the dissolution of the partnership was not amicable. *Id.* Therefore, Stokes has an incentive to find that George's diagnosis of Mitchell's was insufficient. *Id.* In opposition, Aramark argues that Mitchell does not provide sufficient evidence that Stokes will be unable to provide a competent, independent appraisal of Mitchell's medical condition. (R. Doc. 22, p. 7). Stokes is a qualified medical expert in orthopedic surgery, who has affiliations with six hospitals in the New Orleans area and has served as a Professor of Surgery at both LSU School of Medicine and Tulane School of Medicine. *Id.*

Counsel has not directed the court to any authority, and the court has found none, which suggests that the Court has authority to make a credibility determination at the IME selection stage. Therefore, the Court does not find that the issue of Stokes' credibility has merit.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff, Valencia Mitchell's, ("Mitchell") **Motion to Quash Independent Medical Exam (R. Doc. 15)** is **DENIED**.

New Orleans, Louisiana, this 15th day of November 2012.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**